# Illinois Official Reports

## Appellate Court

---

**Country Club Estates Condominium Ass'n v. Bayview Loan Servicing LLC,**
**2017 IL App (1st) 162459**

---

| | |
|---|---|
| Appellate Court Caption | COUNTRY CLUB ESTATES CONDOMINIUM ASSOCIATION, Plaintiff-Appellant, v. BAYVIEW LOAN SERVICING LLC and ALL UNKNOWN OCCUPANTS, Defendants (Bayview Loan Servicing LLC, Defendant-Appellee). |
| District & No. | First District, Second Division<br>Docket No. 1-16-2459 |
| Filed | August 8, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-M6-3500; the Hon. Camille E. Willis, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Fullett Rosenlund Anderson PC, of Lake Zurich (Stuart A. Fullett, Jeffrey D. Swanson, and Antonio C. Capozzi, of counsel), for appellant.<br><br>Noonan & Lieberman, Ltd., of Chicago (James V. Noonan and Robert Reynolds, of counsel), for appellee. |

| Panel | JUSTICE MASON delivered the judgment of the court, with opinion. Presiding Justice Hyman and Justice Pierce concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant, Bayview Loan Servicing LLC (Bayview), purchased a condominium unit through a foreclosure sale confirmed in November 2014. At the time of the sale, the unit had accrued nearly $14,000 in unpaid monthly assessments to plaintiff, Country Club Estates Condominium Association (Association). But seven months after its purchase, despite a demand from the Association, Bayview refused to pay *any* assessments, past or present. Thus, in April 2015, the Association filed the present lawsuit against Bayview pursuant to the Forcible Entry and Detainer Act (735 ILCS 5/9-101 *et seq.* (West 2014)), seeking possession of the unit and $18,659.26 in unpaid assessments.

¶ 2    Nearly two months after the lawsuit was filed, and seven months after Bayview acquired the unit, Bayview tendered to the Association a payment of $4771.85, which represented only the assessments that accrued after the foreclosure sale. Bayview then moved for summary judgment, arguing that under section 9(g)(3) of the Condominium Property Act (Act) (765 ILCS 605/9(g)(3) (West 2014)), its tender of assessments accruing after the foreclosure sale extinguished the Association's lien for assessments that accrued before the foreclosure sale. The trial court agreed and granted partial summary judgment to Bayview as to the presale assessments.

¶ 3    We reverse and hold that, in order to extinguish presale assessments under section 9(g)(3), a foreclosure buyer must make *prompt* payment of assessments after acquiring the property. Summary judgment for Bayview was improper because a material question of fact exists as to whether Bayview's tender, seven months after acquiring the unit, can be considered prompt. We therefore remand for further proceedings.

¶ 4                          BACKGROUND

¶ 5    The following facts are undisputed. On November 21, 2014, Bayview acquired title via sheriff's deed to a condominium unit located at 4002 West 193rd Street in Country Club Hills, Illinois. That unit is part of the Association, and pursuant to the Act, the unit owner is required to pay monthly assessments to the Association. The previous owner had unpaid assessments dating back to January 2011.

¶ 6    After it purchased the property at the foreclosure sale, Bayview failed to pay any assessments. On March 13, 2015, the Association sent Bayview a letter demanding payment of $18,379.26 in past-due assessments that accrued both before and after Bayview acquired the unit. When Bayview still refused to pay, the Association filed this lawsuit on April 27, 2015, seeking (i) possession of the unit and (ii) a judgment against Bayview for $18,659.26, plus late charges, interest, fines, chargebacks, and any assessments accruing after the filing of the action.

¶ 7    On June 22, 2015, Bayview tendered a payment of $4771.85 to the Association, representing only the assessments that accrued after it purchased the unit. The Association

refused the tender, as it was not the Association's policy to accept partial payments. Bayview then moved for partial summary judgment. In its motion, Bayview admitted that it owed $4771.85 in assessments that accrued since it purchased the unit, but it argued that under section 9(g)(3) of the Act, its tender of the postsale assessments extinguished the Association's lien for the presale assessments.

¶ 8    In response, the Association argued that, under our supreme court's interpretation of section 9(g)(3) in *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 24, a foreclosure buyer is required to make "prompt" payment of postsale assessments in order to extinguish an association's lien for previous unpaid assessments. Although the Association did not file a cross-motion for summary judgment, it further argued that Bayview's tender was not prompt as a matter of law. As stated by the Association's counsel in oral argument: "I don't see a universe where seven months is prompt."

¶ 9    The trial court granted Bayview's motion for partial summary judgment and denied the Association's motion for reconsideration. Following a prove-up, the court granted $5249.92 in postsale assessments to the Association. The court also entered a finding under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) that there was no just cause to delay the enforcement or appeal of its ruling, and it stayed the issue of the Association's request for attorney fees pending the result of the appeal.

¶ 10                                        ANALYSIS

¶ 11    The Association argues, as it did before the trial court, that under *1010 Lake Shore*, a foreclosure buyer must make prompt payment of current assessments in order to extinguish an association's lien for any presale amounts due and owing. It further argues that Bayview's delay of seven months in tendering payment of postsale assessments was not prompt as a matter of law, or, alternatively, that the reasonableness of Bayview's payment presents a material issue of fact precluding summary judgment.

¶ 12    Bayview argues that, under the plain language of section 9(g)(3), there is no promptness requirement; a foreclosure buyer may withhold assessments for as long as it pleases, regardless of the reasonableness of such action, and still extinguish the association's lien whenever it chooses to pay the postsale assessments. In the alternative, Bayview argues that if *1010 Lake Shore* imposes a promptness requirement, it should not be applied retroactively since *1010 Lake Shore* was not decided until more than five months after Bayview's partial tender.

¶ 13    The interpretation of a statute is a question of law that we review *de novo* (*Taddeo v. Board of Trustees of the Illinois Municipal Retirement Fund*, 216 Ill. 2d 590, 595 (2005)), as is the propriety of the trial court's grant of summary judgment (*Allegis Realty Investors v. Novak*, 223 Ill. 2d 318, 330 (2006)). In interpreting a statute, our main goal is to ascertain and effectuate the intent of the legislature. *1010 Lake Shore*, 2015 IL 118372, ¶ 21. The best indicator of that intent is the language of the statute itself, given its plain and ordinary meaning. *Id.* If the language is unambiguous, we apply it as written, but where the language is unclear, we may determine the legislature's intent from other sources, such as legislative history. *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 395 (2003).

¶ 14    Section 9(g) of the Act provides, in relevant part:

"(1) If any unit owner shall fail or refuse to make any payment of the common expenses or the amount of any unpaid fine when due, the amount thereof *** shall constitute a lien on the interest of the unit owner in the property ***.

* * *

(3) The purchaser of a condominium unit at a judicial foreclosure sale *** shall have the duty to pay the unit's proportionate share of the common expenses for the unit assessed from and after the first day of the month after the date of the judicial foreclosure sale ***. Such payment confirms the extinguishment of any lien created pursuant to paragraph (1) or (2) of this subsection (g) by virtue of the failure or refusal of a prior unit owner to make payment of common expenses ***." 765 ILCS 605/9(g)(1), (3) (West 2014).

Under the plain language of this section, it is clear that a foreclosure buyer's duty to pay monthly assessments begins on "the first day of the month after the date of the judicial foreclosure sale." 765 ILCS 605/9(g)(3) (West 2014). But on the face of the statute, section 9(g)(3) does not contain any time limit for confirming the extinguishment of an association's lien. Thus, we must look beyond the statute's language in order to resolve this issue.

¶ 15    In determining the legislature's intent, we consult the legislative history of section 9(g). See *Krohe*, 204 Ill. 2d at 398 ("legislative history and debates are '[v]aluable construction aids in interpreting an ambiguous statute' " (quoting *Advincula v. United Blood Services*, 176 Ill. 2d 1, 19 (1996))). Unfortunately, there is no legislative debate pertaining specifically to the extinguishment clause; the current version of section 9(g)(3), which became effective in 1992, passed unanimously without substantive discussion. Pub. Act 87-692, § 1 (eff. Jan. 1, 1992) (amending Ill. Rev. Stat. 1991, ch. 30, ¶ 309); see 87th Ill. Gen. Assem., House Proceedings, May 3, 1991, at 38-39, 41; 87th Ill. Gen. Assem., Senate Proceedings, June 20, 1991, at 109-10; 87th Ill. Gen. Assem., House Proceedings, June 27, 1991, at 74-75. But on other occasions, our legislature has expressed concern about the difficulties faced by condominium associations when a unit owner fails to pay his or her share of common expenses and the unit then goes into foreclosure. For instance, in 2006, the legislature adopted an amendment to section 9(g) that would give greater protection to condominium associations (Pub. Act 94-1049, § 5 (eff. Jan. 1, 2007) (adding 765 ILCS 605/9(g)(4), (5))). In support of that amendment, Representative Hamos stated:

"[T]he issue here is that within a condo building there are other condominium owners. They were not responsible for the delinquency, they didn't cause the foreclosure, but they as an association are responsible for paying the operating expenses and maintenance costs associated with that building. It's not their fault that there's a foreclosure, but they're going to have to eat the costs ***. *** There are costs to operating that building and the rest of the unit owners are going to end up paying the cost for the delinquency." 94th Ill. Gen. Assem., House Proceedings, Apr. 11, 2006, at 36-37 (statements of Representative Hamos).

See also 94th Ill. Gen. Assem., House Proceedings, Apr. 10, 2006, at 22 (statements of Representative Nekritz) (expressing concern that "associations are losing thousands and thousands of dollars every year for back assessments that do not get paid"). Representative Hamos additionally noted that delinquencies are particularly problematic for small condominium associations, where there are fewer unit owners to absorb the costs incurred by

an owner who fails to pay the unit's fair share of common expenses. 94th Ill. Gen. Assem., House Proceedings, Apr. 11, 2006, at 36-37 (statements of Representative Hamos).

¶ 16    Even though the legislators were discussing the 2006 amendment to the Act, their concerns about the difficulties faced by condominium associations are still pertinent to the interpretation of section 9(g)(3). The current situation provides a useful case in point: since 2011, the unit's former owner was delinquent on assessments, thus exposing the Association's other unit owners to the obligation to pay more than their share of common expenses to cover the shortfall. Eventually, in 2014, the unit was foreclosed upon. This would ordinarily be a mixed blessing for the other unit owners: it means that they permanently lose most of the unpaid back assessments,[1] but it *should* also mean that the new owner would begin paying assessments going forward, as required by section 9(g)(3). Unfortunately, Bayview withheld assessments for seven months, ultimately forcing the Association to sue before Bayview tendered the amount it undeniably owed.

¶ 17    Now, Bayview concedes that it owes the assessments that accrued since it purchased the unit—and it could not reasonably do otherwise, given the clear language of section 9(g)(3)—but it asserts that its tender of those assessments, regardless of its timeliness (or lack thereof), should automatically serve to extinguish the Association's ability to pursue payment of presale delinquent assessments. We disagree.

¶ 18    In this regard, our supreme court's discussion of section 9(g)(3) in *1010 Lake Shore*, 2015 IL 118372, is instructive:

>"The first sentence of section 9(g)(3) plainly requires a foreclosure sale purchaser to pay common expense assessments beginning in the month following the foreclosure sale. The second sentence provides an incentive for *prompt* payment of those postforeclosure sale assessments ***. Accordingly, under the plain language of section 9(g)(3), the payment of postforeclosure sale assessments formally approves and makes certain the cancellation of the condominium association's lien." (Emphasis added.) *Id.* ¶ 24.

Thus, *1010 Lake Shore* acknowledges that a time requirement is implicit in section 9(g)(3), insofar as that section gives foreclosure buyers an "incentive for prompt payment." If, as Bayview argues, a foreclosure sale buyer could withhold payment of postforeclosure sale assessments indefinitely and still obtain the benefit of section 9(g)(3), the statute would not provide any such incentive.

¶ 19    Bayview asserts that even without any time limit on extinguishment of an association's lien, the statute still incentivizes prompt payment of assessments as they become due because foreclosure buyers typically wish to unencumber and sell their acquisitions as soon as possible. But Bayview's own actions in this case belie such an argument. Bayview was in no apparent hurry to pay the assessments it now admits that it owes—not when Bayview acquired title to the unit, not four months later when the Association sent a letter demanding payment, and not when the Association was finally forced to file suit. Rather, Bayview waited two months after the commencement of the action to tender any payment.

---

[1]Under section 9(g)(4) (765 ILCS 605/9(g)(4) (West 2014)), the Association can recover six months of past-due expenses if Bayview later sells the unit to a third party, but this still leaves the majority of the past-due expenses unpaid.

¶ 20    Bayview additionally argues that *1010 Lake Shore* is distinguishable because the foreclosure buyer in that case did not make any payments, prompt or otherwise; thus, the court's discussion of "prompt payment" is merely *dictum*. But we are not free to ignore the *dicta* of our supreme court. As our supreme court has repeatedly stated, " 'Even *obiter dictum* of a court of last resort can be tantamount to a decision and therefore binding in the absence of a contrary decision of that court.' " *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 282 (2009) (quoting *Cates v. Cates*, 156 Ill. 2d 76, 80 (1993)); see also *People v. Williams*, 204 Ill. 2d 191, 207 (2003) (regardless of whether Illinois Supreme Court's statement was best classified as judicial or *obiter dictum*, appellate court erred by not following it).[2]

¶ 21    Therefore, based on *1010 Lake Shore* and the statements of our legislature concerning the policies animating section 9(g), we hold that in order to extinguish an association's lien for preforeclosure sale assessments, a foreclosure buyer must make "prompt" payment of current assessments. In keeping with the well-established principle that a mortgage foreclosure proceeding is a proceeding in equity (*PNC Bank, National Ass'n v. Wilson*, 2017 IL App (2d) 151189, ¶ 25 (citing *Federal National Mortgage Ass'n v. Bryant*, 62 Ill. App. 3d 25, 27 (1978))), the question of whether a particular payment is "prompt" is fact-based, taking the particular circumstances and the equities of the situation into account.

¶ 22    We note that, in denying the Association's motion for reconsideration, the trial court stated that it was unsure what "prompt" payment would mean in this context and requested guidance on that matter if, in fact, we held that prompt payment was required. For that, we look to the language of the statute itself, which provides that foreclosure buyers become responsible for paying assessments "from and after the first day of the month after the date of the judicial foreclosure sale" (765 ILCS 605/9(g)(3) (West 2014)). Although, as we discuss later, this is not necessarily a rigid deadline for the commencement of payment, the wording shows that the legislature contemplated that monthly payments would ideally be made "from and after the first day of the month" following the foreclosure sale. *Id.* In some cases, there may be extenuating circumstances that would excuse a failure to tender the required assessments commencing the month after purchase, but no such circumstances excusing Bayview's delay in payment are before us. In the absence of any extenuating circumstances, we would expect assessments to be tendered in the month after purchase. To hold otherwise and permit indefinite delay on the part of foreclosure buyers would impose unacceptable hardship upon the buyer's fellow unit owners, who in many instances are already losing thousands of dollars in unpaid assessments as a result of the unit's foreclosure.

¶ 23    Bayview argues that such a rule is unfair to foreclosure buyers for two reasons: first, according to Bayview, it gives condominium associations an incentive to wrongfully refuse a buyer's tender of postsale assessments in an effort to recover all past-due assessments and, second, given the delay in some cases between the sale and the order confirming the sale, it would be unreasonable to expect foreclosure buyers to pay condominium assessments before ownership of the property has been confirmed by the court.

---

[2]Judicial *dictum* is a deliberate expression of opinion addressing a point briefed and argued by counsel, while *obiter dictum* is an expression of opinion made as an aside. *Exelon Corp.*, 234 Ill. 2d at 277. In this case, the *1010 Lake Shore* court's discussion of prompt payment would likely be classified as *obiter dictum*; nevertheless, as noted, we are bound by it. *Williams*, 204 Ill. 2d at 207.

¶ 24    Courts can and should take such circumstances into account when determining whether a buyer's payment of assessments is "prompt." Thus, for instance, if a buyer's *prompt* tender of all postsale assessments is unreasonably refused by a condominium association, any further delay in payment would clearly be the fault of the association rather than the buyer. See *State Bank of Geneva v. Sorenson*, 167 Ill. App. 3d 674, 680 (1988) (a party seeking equitable relief cannot take advantage of its own wrongdoing). Similarly, if it takes months for a judicial sale to be confirmed by the court, but the buyer pays its assessments shortly after the confirmation order (dating back to the month following the sale), the buyer's payment could be deemed prompt under the circumstances. But no such mitigating facts are evident here. The record does not state when the foreclosure sale occurred, but we know that Bayview acquired title to the unit on November 21, 2014, and yet did not tender any payments until June 22, 2015. The record does not disclose any facts that would explain or mitigate this seven-month delay in payment.

¶ 25    Bayview additionally argues that this case is analogous to *Pembrook Condominium Ass'n-One v. North Shore Trust & Savings*, 2013 IL App (2d) 130288, and *5510 Sheridan Road Condominium Ass'n v. U.S. Bank*, 2017 IL App (1st) 160279, in which a foreclosure buyer's tender of postsale assessments extinguished the condominium association's lien for presale assessments. For the reasons that follow, we find both cases distinguishable.

¶ 26    The *Pembrook* defendant purchased a condominium unit at a foreclosure sale on April 13, thus becoming responsible for monthly assessments from May 1 onwards. On June 18, defendant tendered a check to the condominium association for its May and June assessments. The *Pembrook* court held that, under section 9(g)(3) of the Act, defendant's tender extinguished the association's lien for assessments that came due before the foreclosure sale. *Pembrook*, 2013 IL App (2d) 130288, ¶ 17.

¶ 27    But *Pembrook* does not hold that a foreclosure buyer may delay payment indefinitely and still claim the benefit of section 9(g)(3). The court held only that defendant's payment, which it made about a month and a half after its first payment became due, was sufficient under the circumstances. There is, in our view, a material distinction between a seven-week delay and a seven-month delay in payment. And the Association here did not jump the gun in filing suit in an effort to obtain payment of presale assessments. Rather, Bayview's inaction and its steadfast refusal to pay forced the Association to file suit and incur additional expense. Finally, to the extent that *Pembrook* might be read as *carte blanche* to foreclosure buyers wishing to delay payment of assessments indefinitely, the case is inconsistent with our supreme court's later decision in *1010 Lake Shore*, which is the controlling authority.

¶ 28    In *Sheridan Road*, a decision from a different division of this court, the plaintiff condominium association argued that section 9(g)(3) required a foreclosure buyer to pay postsale assessments by "the first day of the month after the date of the judicial foreclosure sale" (765 ILCS 605/9(g)(3) (West 2014)) in order to avail itself of the statute's extinguishment provision. *Sheridan Road*, 2017 IL App (1st) 160279, ¶ 19. The *Sheridan Road* court disagreed, holding that the phrase "the first day of the month after the date of the judicial foreclosure sale" was not a deadline for payment but, rather, the time at which the obligation to pay postsale assessments begins. *Id.* ¶ 20.

¶ 29    We do not disagree with this conclusion; like the *Sheridan Road* court, we do not read that statutory phrase as an explicit deadline for payment. Rather, for the reasons stated above, we hold that payment must be prompt under the circumstances (though not necessarily

strictly by the first of the month after the sale) to extinguish an association's lien. Indeed, the *Sheridan Road* court acknowledged that ensuring prompt payment was one of the legislature's key concerns in enacting the present version of section 9(g)(3):

> "[T]he General Assembly was aware of and concerned with the possibility that purchasers who became liable for postsale expenses would not pay in a timely manner. To address that problem, the legislature designed section 9(g)(3) to encourage prompt payment of *postsale* expenses by setting their payment as a precondition to the extinguishment of association liens for *presale* expenses." (Emphases in original.) *Id.* ¶ 24.

Additionally, as with *Pembrook*, to the extent that *Sheridan Road* may be read as imposing no timing deadline whatsoever on foreclosure buyers, we find that conclusion to be inconsistent with *1010 Lake Shore*.

¶ 30        Finally, Bayview argues that even if *1010 Lake Shore* imposes a requirement of prompt payment, that requirement should not be applied retroactively in this case. But *1010 Lake Shore* did not *create* a requirement of promptness; it merely articulated the requirement that was already implicit in the purpose underlying section 9(g)(3). See *id.* (noting that "the legislature designed section 9(g)(3) to encourage prompt payment of *postsale* expenses" (emphasis in original)) Accordingly, we do not find that Bayview's pre-*1010 Lake Shore* tender is exempt from the timeliness requirement of section 9(g)(3).

¶ 31        Thus, we turn to consider whether summary judgment for Bayview as to the presale expenses was proper. We cannot discern from the record what reasons, if any, existed for Bayview's delay in payment. And the Association did not file a cross-motion for summary judgment, so we are not in a position to say that Bayview's tender was not prompt as a matter of law. Because we have determined that the trial court erred in entering summary judgment in favor of Bayview, we remand for further proceedings to resolve whether Bayview's tender of postsale assessments was timely under section 9(g)(3).

¶ 32                                    CONCLUSION

¶ 33        We hold that, in order to obtain extinguishment of a condominium association's lien for presale assessments under section 9(g)(3) of the Act, a foreclosure buyer must make prompt payment of postsale assessments. We therefore reverse the trial court's grant of partial summary judgment for Bayview since a material issue of fact exists as to whether Bayview's tender, seven months after acquiring title to the property, was prompt.

¶ 34        Reversed and remanded.