# Illinois Official Reports

## Appellate Court

---

*Quadrangle House Condominium Ass'n v. U.S. Bank, N.A.*,
2018 IL App (1st) 171713

---

| | |
|---|---|
| Appellate Court Caption | QUADRANGLE HOUSE CONDOMINIUM ASSOCIATION, Plaintiff-Appellant, v. U.S. BANK, N.A., Defendant-Appellee. |
| District & No. | First District, Sixth Division<br>Docket No. 1-17-1713 |
| Filed | April 20, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 20-M1-700735; the Hon. Orville E. Hambright Jr., Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Jeffrey S. Youngerman, Terry A. Fox, and Timothy P. Mahoney, of Flaherty & Youngerman, P.C., of Chicago, for appellant.<br><br>Brian R. Merfeld, of McCalla Raymer Leibert Pierce, LLC, of Chicago, for appellee. |
| Panel | PRESIDING JUSTICE HOFFMAN delivered the judgment of the court, with opinion.<br>Justices Cunningham and Connors concurred in the judgment and opinion. |

**OPINION**

¶ 1    The plaintiff, Quadrangle House Condominium Association (Association), appeals from an order of the circuit court, which granted summary judgment in favor of the defendant, U.S. Bank, N.A. (Bank), on the Association's complaint seeking possession of the condominium unit commonly known as unit 18E, 6700 S. South Shore Dr., Chicago, Illinois (hereinafter referred to as the Subject Unit)—plus a money judgment against the Bank in the sum of $17,810.35 for past due condominium assessments, interest, reasonable attorney fees and costs—and denied its cross-motion for summary judgment. For the reasons which follow, we affirm the judgment of the circuit court.

¶ 2    The facts giving rise to this litigation are not in dispute. On October 18, 2011, the Bank filed an action in the circuit court of Cook County against Sharla Hicks, the then title holder of the Subject Unit, and others to foreclose the mortgage thereon (case No. 11 CH 35958). On August 12, 2015, the circuit court entered a judgment of foreclosure and sale in favor of the Bank. A judicial sale of the Subject Unit was held on November 13, 2015, at which the Bank was the successful bidder. On January 7, 2016, the circuit court entered orders confirming the sale and granting the Bank possession of the Subject Unit.

¶ 3    On August 30, 2016, the Bank requested verification from the Association as to the amount of monthly assessments due on the Subject Unit. On September 1, 2016, the Association generated and sent a copy of the ledger for the Subject Unit to the Bank, reflecting $5411.31 in unpaid assessments accruing from November 13, 2015, through September 1, 2016.

¶ 4    On September 13, 2016, the Bank sent a $5411.31 check to the Association for the unpaid assessments. On November 30, 2016, the Association issued a Notice and Demand for possession of the Subject Unit to the Bank, demanding $17,810.35 for unpaid assessments, plus attorney fees and costs.

¶ 5    On January 13, 2017, the Association commenced the instant action, seeking an order for possession of the Subject Unit and a judgment against the Bank in the sum of $17,810.35, plus after-accruing assessments, interest, reasonable attorney fees, and costs. The past due amount included unpaid assessments that accrued prior to the Bank's purchase of the Subject Unit.

¶ 6    The Bank filed a combined motion under section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2016)), seeking an involuntary dismissal of the Association's complaint pursuant to section 2-619 of the Code (*id.* § 2-619) or, in the alternative, summary judgment in its favor pursuant to section 2-1005 of the Code (*id.* § 2-1005). In relevant part, the Bank argued that, pursuant to section 9(g)(3) of the Condominium Property Act (Act) (765 ILCS 605/9(g)(3) (West 2016)), its payment of $5411.31 for assessments accruing after its purchase of the Subject Unit confirmed the extinguishment of any lien created in favor of the Association by reason of unpaid assessments accruing prior to its purchase of the unit at the judicial foreclosure sale held on November 13, 2015. The Association responded to the Bank's motion and filed a cross-motion for summary judgment, arguing, in relevant part, that the Bank failed to pay the monthly assessments on the Subject Unit beginning in the month following its purchase of the unit and only began paying post-purchase assessments in September of 2016. It concluded, therefore, that the Bank did not comply with the requirements of section 9(g)(3) of the Act and its payment of post-purchase assessments on September 13, 2016, did not confirm the extinguishment of any lien created in its favor for unpaid presale assessments.

¶ 7        On June 7, 2017, the circuit court entered an order granting the Bank's motion for summary judgment and denying the Association's cross-motion for summary judgment. That order also recites that the Bank withdrew its motion for involuntary dismissal. This appeal followed.

¶ 8        As this case was disposed of by the circuit court in response to cross-motions for summary judgment, our review is *de novo*. See *Lake County Grading Co. v. Village of Antioch*, 2014 IL 115805, ¶ 18. Summary judgment is to be granted only in those cases in which there is no genuine issue of material fact as to one or more major issue and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2016). When, as in this case, parties file cross-motions for summary judgment, they concede that only a question of law is involved and invite the court to decide the issue on the record. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. However, that concession notwithstanding, this court is not obligated to affirm a summary judgment in favor of either party if a material issue of fact exists, precluding summary judgment in favor of the movant. *Id.*

¶ 9        In its brief before this court, the only issue argued by the Association is whether, pursuant to section 9(g)(3) of the Act, the Bank's $5411.31 payment for post-purchase assessments on September 13, 2016, confirmed the extinguishment of any lien in its favor by reason of the prior unit owner's failure to pay assessments accruing prior to the Bank's purchase of the Subject Unit at the foreclosure sale. The Association did not raise any other argument in support of a reversal of the circuit court's judgment. As a consequence, any other argument for reversal has been forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Nov. 1, 2017); *WISAM 1, Inc. v. Illinois Liquor Control Comm'n*, 2014 IL 116173, ¶ 23.

¶ 10        Relying upon the supreme court's decision in *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, the Association contends that section 9(g)(3) of the Act requires that, in order to confirm the extinguishment of any lien it possessed on the Subject Unit for unpaid assessments accruing prior to the Bank's purchase of the unit, the Bank was required to commence remitting payment for post-purchase assessments on the unit in the month following its purchase at the foreclosure sale. The Association asserts that section 9(g)(3) provides for a rigid deadline of the month following the foreclosure sale for the Bank's obligation to commence remitting post-purchase assessments and argues that, because the Bank failed to commence paying assessments for the Subject Unit in the month following the foreclosure sale, the Bank's payment of post-purchase assessments in September 2016 did not extinguish its lien for unpaid pre-sale assessments. The Association concludes, therefore, that the circuit court erred in granting summary judgment in favor of the Bank and denying its cross-motion for summary judgment.

¶ 11        We reject the Association's argument that, in order to extinguish a condominium association's lien for unpaid pre-sale assessments, the purchaser of a condominium unit at a judicial foreclosure sale is required to commence remitting post-purchase assessments in the month following the sale. Section 9(g) of the Act provides, in relevant part, that:

>        "(1) If any unit owner shall fail or refuse to make any payment of the common expenses or the amount of any unpaid fine when due, the amount thereof *** shall constitute a lien on the interest of the unit owner in the property ***.
>        ***
>        (3) The purchaser of a condominium unit at a judicial foreclosure sale *** shall have the duty to pay the unit's proportionate share of the common expenses for the unit assessed from and after the first day of the month after the date of the judicial

foreclosure sale ***. Such payment confirms the extinguishment of any lien created pursuant to paragraph (1) *** of this subsection (g) by virtue of the failure or refusal of a prior unit owner to make payment of common expenses ***." 765 ILCS 605/9(g) (West 2016).

As this court noted in its decision in *Country Club Estates Condominium Ass'n v. Bayview Loan Servicing LLC*, 2017 IL App (1st) 162459, ¶ 14, "it is clear that a foreclosure buyer's duty to pay monthly assessments begins on 'the first day of the month after the date of the judicial foreclosure sale.' [Citation.] But on the face of the statute, section 9(g)(3) does not contain any time limit for confirming the extinguishment of an association's lien." See also *5510 Sheridan Road Condominium Ass'n v. U.S. Bank*, 2017 IL App (1st) 160279, ¶ 20. In its decision in *1010 Lake Shore*, the supreme court did state that "[t]he first sentence of section 9(g)(3) plainly requires a foreclosure sale purchaser to pay common expense assessments beginning in the month following the foreclosure sale." *1010 Lake Shore*, 2015 IL 118372, ¶ 24. However, we do not interpret that phrase to mean that the purchaser of a condominium unit at a foreclosure sale must commence remitting payments for post-purchase assessments in the month following the sale. Rather, we interpret that phrase in the supreme court's decision to mean, as section 9(g)(3) clearly provides, that the purchaser of a condominium unit at a judicial foreclosure sale is obligated to pay the "common expenses for the unit assessed from and after the first day of the month after the date of the judicial foreclosure sale." 765 ILCS 605/9(g)(3) (West 2016). The first sentence of section 9(g)(3) merely fixes the date when the purchaser's liability for assessments begins. Our conclusion in this regard is further supported by the supreme court's statement in that same paragraph that the "second sentence [in section 9(g)(3)] provides an incentive for prompt payment of those postforeclosure sale assessments." *1010 Lake Shore*, 2015 IL 118372, ¶ 24; see also *5510 Sheridan Road Condominium*, 2017 IL App (1st) 160279, ¶¶ 20-24.

¶ 12     Although we have rejected the Association's argument that the Bank was required to commence remitting payment for post-purchase assessments on the Subject Unit beginning in the month following the foreclosure sale in order to extinguish any lien that the Association had on the Subject Unit for unpaid pre-sale assessments, our analysis continues. As an alternative argument, the Association asserts that the Bank failed to "promptly" pay the post-purchase assessments on the Subject Unit, and as a consequence, its September 2016 payment did not confirm the extinguishment of its lien on that unit for unpaid presale assessments. We disagree.

¶ 13     As noted earlier, the supreme court in *1010 Lake Shore* stated that "[t]he second sentence [in section 9(g)(3)] provides an incentive for prompt payment of those postforeclosure sale assessments, stating '[s]uch payment confirms the extinguishment of any lien created' under subsection 9(g)(1) by the prior unit owner's failure to pay assessments." *1010 Lake Shore*, 2015 IL 118372, ¶ 24. Contrary to our colleagues in *Bayview*, we do not believe that the cited sentence in *1010 Lake Shore* means that payment of post-purchase assessments must be prompt in order to constitute a confirmation of the extinguishment of any lien created under subsection 9(g)(1) for any unpaid pre-sale assessments. See *Bayview*, 2017 IL App (1st) 162459, ¶ 29. In *1010 Lake Shore*, the supreme court stated that the second sentence of section 9(g)(3) provides an "incentive for prompt payment" of post-purchase assessments. The court did not hold that prompt payment is a condition precedent to confirmation of the extinguishment of any lien created under subsection 9(g)(1) of the Act. Incentive is defined as

"something that incites or has a tendency to incite to determination or action." Webster's Third New International Dictionary (1981). The payment of post-purchase assessments is the step necessary to confirm the extinguishment of a condominium association's lien for unpaid pre-sale assessments. *1010 Lake Shore*, 2015 IL 118372, ¶ 25. Prior to the confirmation of the extinguishment of a condominium association's section 9(g)(1) lien, the lien is enforceable. See *id.* ¶¶ 41-42. It is that additional step required for extinguishment of the lien that is an incentive for prompt payment of post-purchase assessments.

¶ 14    Our conclusion that payment of post-purchase assessments, whenever made, is the step necessary to confirm the extinguishment of any lien created under section 9(g)(1) of the Act is supported by the supreme court's decision in *1010 Lake Shore*. In paragraph 24 of that decision, the supreme court held that, "under the plain language of section 9(g)(3), the payment of postforeclosure sale assessments formally approves and makes certain the cancellation of the condominium association's lien." *Id.* ¶ 24. In paragraph 27, the supreme court held that "[s]ection 9(g)(3) provides an additional step to confirm or formally approve the extinguishment by paying the postforeclosure sale assessments." *Id.* ¶ 27. In that same decision, the supreme court held that "[s]ection 9(g)(3) only requires the foreclosure sale purchaser to pay assessments coming due following the foreclosure sale. Payment of those assessments confirms the extinguishment of the lien for the prior owner's unpaid assessments." *Id.* ¶ 39. The supreme court never qualified its analysis by stating that, before the payment of post-purchase assessments could act to confirm the extinguishment of any lien created under subsection 9(g)(1) of the Act, the payment must be made promptly following the purchase of the condominium at a foreclosure sale.

¶ 15    The supreme court in *1010 Lake Shore* found no ambiguity in the provisions of the Act; rather, it found the language to be plain in its requirements. *Id.* ¶¶ 24-25, 27, 38. "Where the language of a statute is clear and unambiguous, a court must give it effect as written, without 'reading into it exceptions, limitations or conditions that the legislature did not express.' " *Garza v. Navistar International Transportation Corp.*, 172 Ill. 2d 373, 378 (1996) (quoting *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 83 (1994)). In Section 9(g)(3) of the Act, the legislature did not place any temporal requirement on the payment of post-purchase assessments in order for the payment to confirm the extinguishment of any lien created under subsection 9(g)(1) of the Act; nor do we believe that the supreme court in *1010 Lake Shore* found promptness of payment to be an implicit requirement in the statute. To the extent that the decision in *Bayview* held to the contrary, we decline to follow it.

¶ 16    The evidentiary material submitted with the Bank's motion for summary judgment established that, on September 13, 2016, it paid the $5411.31 in post-purchase assessments on the Subject Unit, which had accrued from the date that it purchased the unit at the foreclosure sale on November 13, 2015, through September 1, 2016. We hold, therefore, that the Bank's payment in full of all of the post-purchase assessments that had accrued prior to September 13, 2016, confirmed the extinguishment of any lien held by the Association for unpaid pre-sale assessments. As a consequence, we affirm the circuit court's order granting summary judgment in favor of the Bank and denying the Association's cross-motion for summary judgment.

¶ 17    Affirmed.