# Illinois Official Reports

## Appellate Court

*U.S. Bank, N.A. v. Quadrangle House Condominium Ass'n*,
2018 IL App (1st) 171711

| | |
|---|---|
| Appellate Court Caption | U.S. BANK, N.A., as Legal Title Trustee for Truman 2012 SC2 Title Trust, Plaintiff and Counterdefendant-Appellee, v. QUADRANGLE HOUSE CONDOMINIUM ASSOCIATION, Defendant and Counterplaintiff-Appellant. |
| District & No. | First District, Second Division <br> Docket No. 1-17-1711 |
| Filed | June 26, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-CH-04811; the Hon. Celia Gamrath, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Jeffrey S. Youngerman, Terry A. Fox, and Timothy P. Mahoney, of Flaherty & Youngerman, P.C., of Chicago, for appellant. <br><br> Plunkett Cooney, P.C., of Chicago (Timothy P. Collins, of counsel), for appellee. |
| Panel | JUSTICE PUCINSKI delivered the judgment of the court, with opinion <br> Presiding Justice Mason and Justice Hyman concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant Quadrangle House Condominium Association (Association) appeals from an order of the circuit court of Cook County granting plaintiff U.S. Bank's motion for summary judgment on its complaint for a declaratory judgment and denying the Association's cross-motion for summary judgment on its counterclaim for unpaid assessments. The sole question of law presented for consideration is whether U.S. Bank's payment of postforeclosure sale assessments, several months after purchasing a condominium unit at a judicial foreclosure sale, extinguished the Association's lien for preforeclosure sale assessments, pursuant to section 9(g)(3) of the Condominium Property Act (Act) (765 ILCS 605/9(g)(3) (West 2016)), and as interpreted by *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372. We affirm the judgment of the circuit court for the reasons that follow.

¶ 2                              BACKGROUND

¶ 3    The subject property, unit 5B, is located at 6700 South Shore Drive, in Chicago, Illinois, and was previously owned by Betty Colvin. In 2011, U.S. Bank's predecessor in interest, Wells Fargo Bank, commenced an action to foreclose a mortgage lien interest encumbering unit 5B. The matter was filed in the Chancery Division and captioned Wells Fargo Bank v. Colvin, No. 11 CH 19139 (Cir. Ct. Cook County).

¶ 4    On July 29, 2015, the circuit court entered an order confirming the sale and granting possession of unit 5B to U.S. Bank as the successful bidder at a judicial sale held on June 24, 2015. The circuit court's order was captioned *U.S. Bank N.A. v. Colvin*, No. 11 CH 19139 (Cir. Ct. Cook County, July 29, 2015). A judicial deed granting U.S. Bank title to unit 5B was issued pursuant to the order approving the sale and was recorded by the Cook County Recorder of Deeds on August 28, 2015. Shortly thereafter, U.S. Bank retained Parkvue Realty (Parkvue) to recover possession of and market unit 5B. U.S. Bank asked Parkvue to contact the Association for information about the payment of postforeclosure sale assessments. Early in September 2015, Parkvue provided the Association with a copy of the judicial deed and informed the Association that any correspondence and assessment invoices were to be sent to U.S. Bank at P.O. Box 830, Armonk, New York 10504.

¶ 5    On September 24, after receiving no response from the Association, U.S. Bank asked the Association for an invoice reflecting the postforeclosure sale assessments due for unit 5B. However, the Association sent U.S. Bank a resident ledger for Gloria Carter, who possessed no interest in unit 5B.

¶ 6    In October, U.S. Bank received the invoice it had requested along with a resident ledger for unit 5B, both showing the amount due from U.S. Bank was $3079.62 for its proportionate share of common expenses beginning July 1, 2015. U.S. Bank also received a resident ledger addressed to Mrs. Colvin, which showed a $62,579.35 amount due for preforeclosure sale assessments.

¶ 7    According to U.S. Bank, it immediately sent the Association a $3919.34 check, dated October 6, 2015, comprising the $3079.62 amount due and $839.72 in assessments for the upcoming month of November. The Association initially claimed that it was never received but then acknowledged having received the check in November, when U.S. Bank placed a stop payment order on the check. On November 6, U.S. Bank issued another $3919.34 check,

which the Association received and credited to U.S. Bank. From December 2015 to February 2017, the Association sent invoices that U.S. Bank paid in full.

¶ 8    In 2016, U.S. Bank requested a paid assessment letter from the Association, and the Association issued a letter on January 25 stating that a $63,464.07 lien in favor of the Association existed under section 9(g)(1) of the Act (765 ILCS 605/9(g)(1) (West 2016)) for the period from May 1, 2009, to January 25, 2016. The letter stated that U.S. Bank had not extinguished the lien by payment of assessments under section 9(g)(3) of the Act (*id.* § 9(g)(3)). The letter stated that the amount due from U.S. Bank under section 9(g)(4) of the Act (*id.* § 9(g)(4)) was the $63,464.07, "due to failure of purchaser at judicial sale to confirm extinguishment of lien, the extinguishment of lien by lender will render the amount owed by the subsequent purchaser to be $0."

¶ 9    In March, the Association sent U.S. Bank a notice and demand for possession of unit 5B as a condition precedent to an action for forcible entry and detainer. In April, U.S. Bank filed the underlying complaint for declaratory judgment in case number 16 CH 04811, asking for a determination that the Association's lien had been extinguished. In June, the Association filed a counterclaim for unpaid assessments totaling $63,464.07, "inclusive of the Colvin Balance." In July, U.S. Bank filed an amended complaint for declaratory judgment.

¶ 10    In 2017, the parties filed cross-motions for summary judgment, and the circuit court entered an order granting summary judgment in favor of U.S. Bank on June 28. The Association filed a timely notice of appeal from the June 28 order, which declared that U.S. Bank had paid all postforeclosure sale assessments required under section 9(g)(3) of the Act and extinguished the Association's lien on the Colvin balance for the period before July 1, 2015.

¶ 11    We take judicial notice that, after the Association filed its notice of appeal, U.S. Bank sold unit 5B to a nonparty on July 31 and the special warranty deed conveying unit 5B was recorded on August 3 as document number 1721557092. See generally *City of Chicago v. Soludczyk*, 2017 IL App (1st) 162449, ¶ 3 n.1. On November 13, this court denied U.S. Bank's motion to dismiss the appeal as moot by application of Illinois Supreme Court Rule 305(k) (eff. July 1, 2017).

¶ 12                                    ANALYSIS

¶ 13    We initially reject U.S. Bank's contention that this appeal is moot because the Association failed to file an appeal bond. See, *e.g.*, *Jack Spring, Inc. v. Little*, 50 Ill. 2d 351, 355-56 (1972) (the right to appeal may not be conditioned upon posting an appeal bond); *Downstate National Bank v. Elmore*, 224 Ill. App. 3d 1075, 1083 (1992) (finding that controversy existed as to plaintiff's lien rights against property and question not mooted by foreclosure action that excluded nonparty); *O'Brien v. Cacciatore*, 227 Ill. App. 3d 836, 842 (1992) (failure to obtain a stay does not, alone, render an issue moot). Moreover, an order granting summary judgment in a declaratory judgment action is final, and a notice of appeal must be filed within 30 days of the entry of the order, as occurred in this case. *Universal Underwriters Insurance Co. v. Judge & James, Ltd.*, 372 Ill. App. 3d 372, 379-80 (2007).

¶ 14    On the merits, the Association solely contends that U.S. Bank's payment of postforeclosure sale assessments several months after purchasing unit 5B at a judicial foreclosure sale did not extinguish the Association's lien for preforeclosure sale assessments,

pursuant to section 9(g)(3) of the Act and as construed by our supreme court in *1010 Lake Shore Ass'n*, 2015 IL 118372.

¶ 15    Because this case was disposed of by the circuit court pursuant to cross-motions for summary judgment, our review is *de novo*. *Quadrangle House Condominium Ass'n v. U.S. Bank, N.A.*, 2018 IL App (1st) 171713, ¶ 8. On cross-motions for summary judgment, the parties concede that only a question of law is presented and invite the court to decide the issue on the record. *Id.* "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556 (2007); 735 ILCS 5/2-1005(c) (West 2016).

¶ 16    The Association argues that it is difficult to read our supreme court's construction of section 9(g)(3) in *1010 Lake Shore Ass'n* as anything other than requiring U.S. Bank to begin paying postforeclosure sale assessments the month after the foreclosure sale in order to confirm the extinguishment of the Association's lien for preforeclosure sale assessments. Because U.S. Bank failed to begin paying postforeclosure sale assessments for unit 5B the month after the foreclosure sale, the Association argues that U.S. Bank's tardy payments did not confirm the extinguishment of the Association's lien.

¶ 17    Section 9(g)(3) states:

"(3) The purchaser of a condominium unit at a judicial foreclosure sale, or a mortgagee who receives title to a unit by deed in lieu of foreclosure or judgment by common law strict foreclosure or otherwise takes possession pursuant to court order under the Illinois Mortgage Foreclosure Law, shall have the duty to pay the unit's proportionate share of the common expenses for the unit assessed from and after the first day of the month after the date of the judicial foreclosure sale, delivery of the deed in lieu of foreclosure, entry of a judgment in common law strict foreclosure, or taking of possession pursuant to such court order. Such payment confirms the extinguishment of any lien created pursuant to paragraph (1) or (2) of this subsection (g) by virtue of the failure or refusal of a prior unit owner to make payment of common expenses, where the judicial foreclosure sale has been confirmed by order of the court, a deed in lieu thereof has been accepted by the lender, or a consent judgment has been entered by the court." 765 ILCS 605/9(g)(3) (West 2016).

¶ 18    In *1010 Lake Shore Ass'n*, 2015 IL 118372, ¶ 24, our supreme court stated that the first sentence of section 9(g)(3) "plainly requires a foreclosure sale purchaser to pay common expense assessments beginning in the month following the foreclosure sale." The supreme court stated that the second sentence of section 9(g)(3) "provides an incentive for prompt payment of those postforeclosure sale assessments." *Id.* The supreme court concluded that pursuant to the plain language of section 9(g)(3), "the payment of postforeclosure sale assessments formally approves and makes certain the cancellation of the condominium association's lien." *Id.*

¶ 19    In *Country Club Estates Condominium Ass'n v. Bayview Loan Servicing, LLC*, 2017 IL App (1st) 162459, ¶ 12, *pet. for leave to appeal denied*, No. 122687 (Ill. Nov. 22, 2017), we considered the argument that there is no promptness requirement under the plain language of section 9(g)(3). We noted that, although the plain language of this section clearly provides that a foreclosure buyer's duty to pay monthly assessments begins on "the first day of the month after the date of the judicial foreclosure sale," this section does not expressly include a deadline

- 4 -

for confirming the extinguishment of an association's lien. *Id.* ¶ 14. We found no legislative debate about the "extinguishment clause" but noted occasions where our legislature expressed concern about the difficulties met by condominium associations when a unit owner fails to pay common expenses and the unit goes into foreclosure. *Id.* ¶ 15. Although that concern was expressed during discussions about the 2006 amendment to the Act, we stated it was still pertinent to the interpretation of section 9(g)(3). *Id.* ¶ 16. We then stated that our supreme court's construction of section 9(g)(3) in *1010 Lake Shore Ass'n* "acknowledges that a time requirement is implicit in section 9(g)(3), insofar as that section gives foreclosure buyers an 'incentive for prompt payment.' If as Bayview argues, a foreclosure sale buyer could withhold payment of postforeclosure sale assessments indefinitely and still obtain the benefit of section 9(g)(3), the statute would not provide any such incentive." *Id.* ¶ 18. Based on the statements of our supreme court in *1010 Lake Shore Ass'n* and our legislature regarding the policies "animating" this section, we held "that in order to extinguish an association's lien for preforeclosure sale assessments, a foreclosure buyer must make 'prompt' payment of current assessments." *Id.* ¶ 21. We stated that "*1010 Lake Shore* [*Ass'n*] did not *create* a requirement of promptness; it merely articulated the requirement that was already implicit in the purpose underlying section 9(g)(3)." (Emphasis in original.) *Id.* ¶ 30.

¶ 20    Eight months after we filed our opinion in *Country Club Estates Condominium Ass'n*, the Sixth Division of this court filed its opinion in *Quadrangle House Condominium Ass'n*, 2018 IL App (1st) 171713, ¶ 11 (filed April 20, 2018), rejecting the condominium association's argument that U.S. Bank was required to begin paying postforeclosure sale assessments in the month following the sale in order to extinguish the association's lien for unpaid preforeclosure sale assessments. The Sixth Division stated, "[c]ontrary to our colleagues in [*Country Club Estates Condominium Ass'n*], we do not believe that the cited sentence in *1010 Lake Shore* [*Ass'n*] means that payment of post-purchase assessments must be prompt in order to constitute a confirmation of the extinguishment of any lien created under subsection 9(g)(1) for any unpaid pre-sale assessments." *Id.* ¶ 13. However, about one month later, the Sixth Division filed *V&T Investment Corp. v. West Columbia Place Condominium Ass'n*, 2018 IL App (1st) 170436, ¶ 30 (filed May 18, 2018), citing our opinion in *Country Club Estates Condominium Ass'n*, as guidance on determining when a foreclosure buyer's payment of assessments is prompt. We see no reason to depart from our holding in *Country Club Estates Condominium Ass'n* and proceed with our analysis to determine whether U.S. Bank made prompt payment of postforeclosure sale assessments.

¶ 21    The circuit court in this case entered an order on July 20, 2015, confirming the sale and granting U.S. Bank possession of unit 5B. U.S. Bank provided the Association with a copy of the judicial deed and an address where assessment invoices were to be sent in early September 2015. U.S. Bank then commenced paying postforeclosure sale assessments on October 6, 2015, about two months after its liability for postforeclosure sale assessments began, but the Association claimed that it was never received and then acknowledged having received the check in November. Under these circumstances, we conclude that U.S. Bank made prompt payment of postforeclosure sale assessments and extinguished the Association's lien for preforeclosure sale assessments. *Cf. Country Club Estates Condominium Ass'n*, 2017 IL App (1st) 162459, ¶ 31 ("We cannot discern from the record what reasons, if any, existed for Bayview's delay in payment. And the Association did not file a cross-motion for summary judgment, so we are not in a position to say that Bayview's tender was not prompt as a matter

of law."); see generally *V&T Investment Corp.*, 2018 IL App (1st) 170436, ¶ 30.

¶ 22                                              CONCLUSION

¶ 23         For the reasons stated, we affirm the judgment of the circuit court of Cook County granting U.S. Bank's motion for summary judgment on its complaint for a declaratory judgment and denying the Association's cross-motion for summary judgment on its counterclaim for unpaid assessments.

¶ 24         Affirmed.