2018 IL App (2d) 171030
No. 2-17-1030
Opinion filed November 29, 2018

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| HOMETOWN CONDOMINIUM ASSOCIATION NO. 2, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-LM-497 |
| SALEEM MOHAMMED, | ) ) ) | Honorable Thomas J. Stanfa, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BURKE delivered the judgment of the court, with opinion.
Presiding Justice Hudson and Justice Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff, Hometown Condominium Association No. 2, created a lien against one of its condominium units, based on the owners' failure to pay assessments and late fees for several years. Defendant, Saleem Mohammed, purchased the unit at a sheriff's sale following the foreclosure on the unit but did not pay his assessments either.

¶ 2     Plaintiff notified defendant that section 9(g)(3) of the Condominium Property Act (Act) (765 ILCS 605/9(g)(3) (West 2016)) required him to extinguish the lien by paying certain association dues and late fees, including those that had gone unpaid by the previous owners. When defendant did not pay dues of any kind for 12 months after the judicial confirmation of sale, plaintiff filed a complaint for forcible entry and detainer and breach of contract.

¶ 3     On the eve of trial, defendant tendered payment purporting to cover the assessments and the late fees that had accrued over the six months before the foreclosure sale and the first month thereafter.  Defendant claimed that the payment extinguished the lien, even though he had made no other payments toward the assessments that were accruing during his ownership.

¶ 4     Following a bench trial, plaintiff obtained a judgment that appears to include all past-due assessments, late fees, and interest accruing before and after the sale.  Section 9(g)(3) permits a purchaser of foreclosed property to confirm the extinguishment of the association's lien for the unpaid assessments of the prior owner by making his own common-expense assessment payments following the sale.  765 ILCS 605/9(g)(3) (West 2016).  The trial court determined that defendant's only payment, which was about 17 months late and less than the amount owed, did not extinguish the lien.  On appeal, plaintiff argues that, to extinguish a lien, the payments by a foreclosure purchaser for postsale assessments must be reasonably "prompt" and completely up to date and that defendant failed to meet that standard.  Defendant contends that a foreclosure purchaser need pay only a single month's assessment following the sale and may make that payment at any time before judgment is entered on the lien.  We need not decide whether a foreclosure purchaser's payment of common expenses must be "prompt" under section 9(g)(3) of the Act, because here defendant made only a partial payment, which did not extinguish the lien. We affirm.

¶ 5                              I. BACKGROUND

¶ 6     This action illustrates two ways a condominium association may recover from a foreclosure sale purchaser certain unpaid assessments owed by the previous owner: enforcement of a lien against the property and an independent statutory remedy to recoup unpaid assessments.

¶ 7    Section 9(g)(1) of the Act permits a condominium association to assert a lien against a unit owner for unpaid common expenses and fines, along with interest, late charges, reasonable attorney fees, and costs of collection.  Any action brought to extinguish the lien of the association shall include the association as a party.  765 ILCS 605/9(g)(1) (West 2016).

¶ 8    Where the condominium unit is foreclosed upon and the title is vested with the purchaser of the property following a judicial foreclosure sale, section 9(g)(3) provides that the purchaser must pay postsale assessments "from and after the first day of the month after the date of the judicial foreclosure sale."  765 ILCS 605/9(g)(3) (West 2016).  Payment of those postsale assessments "confirms the extinguishment" of any lien for presale assessments that were unpaid by the previous owner.  765 ILCS 605/9(g)(3) (West 2016).

¶ 9    In addition, section 9(g)(4) states that the purchaser of a condominium unit at a judicial foreclosure sale must pay the unpaid common expenses for the unit during the six months immediately preceding the institution of an action to enforce the collection of assessments against the prior owner.  765 ILCS 605/9(g)(4) (West 2016).  The purpose of section 9(g)(4) is to allow the association to recover a portion of the prior owner's unpaid assessments from the new owner.  *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 32.

¶ 10    Section 9(g)(4) creates an independent claim for the association directly against the new owner, and the obligation arises at the time of the foreclosure purchase.  *Sylva, LLC v. Baldwin Court Condominium Ass'n*, 2018 IL App (1st) 170520, ¶¶ 12-13.  The statute imposes an independent obligation on the new owner, and once that obligation is breached, a separate statutory lien under section 9(g)(4) arises in favor of the association.  *Sylva*, 2018 IL App (1st) 170520, ¶ 13.  That separate statutory lien is based not on the prior owner's delinquency, but on

the new owner's failure to make the payment required by the Act. *Sylva*, 2018 IL App (1st) 170520, ¶ 13.

¶ 11    Section 9(g)(4) allows a condominium association to recover a portion of the prior owner's unpaid assessments from a new third-party purchaser. *1010 Lake Shore*, 2015 IL 118372, ¶ 32. "Section 9(g)(3), in contrast, applies to all foreclosure sale purchasers, including mortgagees, and it simply requires the purchaser to pay assessments beginning the month following the foreclosure sale to confirm the extinguishment of the lien created by the prior owner's failure to pay assessments." *1010 Lake Shore*, 2015 IL 118372, ¶ 33. Section 9(g)(3) does not require a foreclosure sale purchaser to pay any of the prior owner's unpaid assessments if the purchaser pays the assessments coming due following the sale. Thus, section 9(g)(3) ensures payment of assessments accruing after the foreclosure sale.

¶ 12    With this statutory framework in mind, we summarize the underlying facts, which are mostly undisputed but suffer from gaps in the record. Plaintiff is a condominium association as defined by the Act and is governed by a certain declaration of condominium ownership for Hometown Condominium No. 2. The declaration requires owners to pay assessments and other common expenses to plaintiff. Section 6.04 provides that assessments are due "[o]n or before the first day of the fiscal year, and on or before the first day of each and every month thereafter until the effective date of the next Annual Assessment."

¶ 13    Defendant purchased his unit, which is part of the association, at a sheriff's sale as part of a foreclosure proceeding in Kane County. The record does not indicate the date of the sale, but the purchase was confirmed in the foreclosure proceeding on March 28, 2016. Defendant recorded his deed to the unit more than a year later, on May 8, 2017.

¶ 14    The unit's previous owners had failed to pay plaintiff their proportionate share of common expenses for years. To recover the arrearage, plaintiff initiated a foreclosure action against the previous owners on a date that is not specified in the record. On November 7, 2012, the court in the foreclosure action entered an amended judgment against the previous owners and for plaintiff in the amount of $14,053, plus $470 in attorney fees.

¶ 15    On February 17, 2017, plaintiff sent a 30-day notice to defendant pursuant to section 9-102 of the Forcible Entry and Detainer Act. See 735 ILCS 5/9-102 (West 2016). The notice demanded payment of both preforeclosure and postforeclosure amounts, but defendant did not pay assessments of any kind.

¶ 16    On April 4, 2017, one year after the judicial confirmation of the sale, plaintiff filed a two-count complaint for forcible entry and detainer and breach of contract. On August 31, 2017, which was the scheduled trial date and 17 months after the sale confirmation, defendant tendered $1670 to plaintiff. At oral argument, the parties agreed that the payment represented the assessments and late fees incurred by the previous owners from September 2015 through April 2016, which was the six-month period preceding the confirmation of sale and the first month after the confirmation. The record contains no notation regarding the payment, but the amount of the check corresponds to the unit's statement of account during that period.

¶ 17    The court continued the trial to October 18, 2017, and expressly allowed plaintiff to deposit the payment, stating that "said deposit of funds shall not in any way waive, infringe or impair plaintiff's rights for relief in this cause except to give defendant credit for said funds."

¶ 18    There is no report of proceedings for the bench trial, but plaintiff represents that the court considered testimony, documentary evidence, and argument on the amounts owed and the effect of defendant's payment on August 31, 2017. The court found that defendant failed to extinguish

plaintiff's lien and it continued the case for the entry of a judgment to enforce that lien against defendant. The court denied plaintiff certain late fees and repair charges that it had incurred for the property, but those rulings are not a part of this appeal.

¶ 19    On November 22, 2017, judgment was entered for plaintiff in the amount of $24,249 in unpaid assessments and late fees, $562 in court costs, and $1412 in attorney fees. Plaintiff was also awarded possession of the unit. The court applied defendant's $1670 payment to the judgment. Otherwise, the record does not indicate the court's method for calculating the judgment. Defendant's timely appeal followed.

¶ 20                                    II. ANALYSIS

¶ 21                              A. Standard of Review

¶ 22    The trial court entered judgment for plaintiff following a bench trial. Ordinarily, a court's findings of fact will not be disturbed on appeal unless they are against the manifest weight of the evidence. *Eychaner v. Gross*, 202 Ill. 2d 228, 251 (2002). A decision is against the manifest weight of the evidence only when the opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence. *Eychaner*, 202 Ill. 2d at 252.

¶ 23    In this case, the facts are undisputed, with the exception of those that are unknown due to the absence of a report of proceedings, an agreed statement of facts, or a bystander's report. See Ill. S. Ct. R. 323 (eff. Dec. 13, 2005). Under *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984), defendant, as the appellant, had the burden to present a sufficiently complete record of the trial proceedings to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court conformed with the law and had a sufficient

factual basis. Doubts that arise from the incompleteness of the record will be resolved against defendant. See *Foutch*, 99 Ill. 2d at 392.

¶ 24 The parties mostly disregard the incompleteness of the record and focus on the interpretation of section 9 of the Act, which we review *de novo*. *1010 Lake Shore*, 2015 IL 118372, ¶ 21. The fundamental objective of statutory construction is to ascertain and give effect to the intent of the legislature, and the most reliable indicator of legislative intent is the statutory language, given its plain and ordinary meaning. *1010 Lake Shore*, 2015 IL 118372, ¶ 21. A reasonable construction must be given to each word, clause, and sentence of a statute, and no term should be rendered superfluous. *1010 Lake Shore*, 2015 IL 118372, ¶ 21.

¶ 25 B. Section 9(g)(3): Extinguishing The Lien

¶ 26 Section 9(g)(1) of the Act provides in relevant part that

"[i]f any unit owner shall fail or refuse to make any payment of the common expenses or the amount of any unpaid fine when due, the amount thereof together with any interest, late charges, reasonable attorney fees incurred enforcing the covenants of the condominium instruments, rules and regulations of the board of managers, or any applicable statute or ordinance, and costs of collections shall constitute a lien on the interest of the unit owner in the property." 765 ILCS 605/9(g)(1) (West 2016).

¶ 27 The plain language of section 9(g)(1) creates a lien in favor of a condominium association upon the failure or refusal of a unit owner to pay common-expense assessments. *1010 Lake Shore*, 2015 IL 118372, ¶ 23. In this case, a lien was created under section 9(g)(1), and plaintiff obtained a judgment of $14,053, plus $470 in attorney fees, against the previous owners for their unpaid share of the common expenses, interest, and late charges.

¶ 28     However, section 9(g)(3) of the Act prescribes a mechanism for a foreclosure sale purchaser to extinguish the lien created by the prior owner's failure to pay.  The statute provides in relevant part that a

> "purchaser of a condominium unit at a judicial foreclosure sale *** shall have the duty to pay the unit's proportionate share of the common expenses for the unit assessed *from and after the first day of the month after the date of the judicial foreclosure sale ***.  Such payment confirms the extinguishment of any lien created* pursuant to paragraph (1) or (2) of this subsection (g) by virtue of the failure or refusal of a prior unit owner to make payment of common expenses, where the judicial foreclosure sale has been confirmed by order of the court ***."  (Emphasis added.)  765 ILCS 605/9(g)(3) (West 2016).

¶ 29     As our supreme court has noted, the first sentence of section 9(g)(3) "plainly requires a foreclosure sale purchaser to pay common expense assessments beginning in the month following the foreclosure sale."  *1010 Lake Shore*, 2015 IL 118372, ¶ 24.  The second sentence "provides an incentive for prompt payment of those postforeclosure sale assessments, stating '[s]uch payment confirms the extinguishment of any lien created' under subsection 9(g)(1) by the unit owner's failure to pay assessments."  *1010 Lake Shore*, 2015 IL 118372, ¶ 24 (quoting 765 ILCS 605/9(g)(3) (West 2014)).  "Accordingly, under the plain language of section 9(g)(3), the payment of [the] postforeclosure sale assessments formally approves and makes certain the cancellation of the condominium association's lien."  *1010 Lake Shore*, 2015 IL 118372, ¶ 24.

¶ 30     The plain language of section 9(g)(3) provides that the new owner shall have the duty to pay the unit's proportionate share of the common expenses assessed from and after the first day of the month after the date of the judicial foreclosure sale, not the date of the judicial

confirmation of the sale. *V&T Investment Corp. v. West Columbia Place Condominium Ass'n*, 2018 IL App (1st) 170436, ¶ 27.

¶ 31    In this case, the sale date is not shown in the record, so the parties treat the date of judicial confirmation as the operative date under section 9(g)(3). In the absence of a complete record, we adopt the parties' shared interpretation that defendant's obligation to pay postsale assessments commenced in April 2016, which was the month immediately following the March 28, 2016, judicial confirmation. The parties further agree that defendant's payment of $1670 included association dues for April 2016. There is also no dispute that defendant made no other payments toward his postsale assessments.

¶ 32    The issue, then, is whether defendant's payment of a single month of postforeclosure assessments, made 17 months after the confirmation of sale, extinguished the lien. We agree with the trial court that it did not. This district has not considered the issue, and there is a split of authority among and within the divisions of the First District over whether section 9(g)(3) imposes a promptness requirement on postforeclosure payments for extinguishing a lien for unpaid assessments. The issue arises where a foreclosure sale purchaser tenders payment for postforeclosure assessments weeks or months after the foreclosure sale. When that happens, the association usually argues that the tardy payment does not extinguish the lien, leaving it enforceable against the purchaser. The purchaser usually responds that the lien is extinguished as soon as the payment is made.

¶ 33    In *Country Club Estates Condominium Ass'n v. Bayview Loan Servicing, LLC*, 2017 IL App (1st) 162459, ¶ 12, *appeal denied*, No. 122687 (Ill. Nov. 22, 2017), the First District, Second Division, ruled that section 9(g)(3) requires the payment to be "prompt." The court acknowledged that, although the plain language of this section clearly provides that a foreclosure

purchaser's duty to pay monthly assessments begins on " 'the first day of the month after the date of the judicial foreclosure sale,' " the section does not expressly include a deadline for confirming the extinguishment of an association's lien. *Country Club Estates*, 2017 IL App (1st) 162459, ¶ 14 (quoting 765 ILCS 605/9(g)(3) (West 2014)). The court found no legislative debate about the "extinguishment clause" but noted occasions where our legislature expressed concern about the difficulties met by an association when a unit owner fails to pay common expenses and the unit goes into foreclosure. *Country Club Estates*, 2017 IL App (1st) 162459, ¶ 15. Although that concern was expressed during discussions about the 2006 amendment to the Act, the court stated that it was still pertinent to the interpretation of section 9(g)(3). *Country Club Estates*, 2017 IL App (1st) 162459, ¶ 16. The court stated that our supreme court's construction of section 9(g)(3) in *1010 Lake Shore*

> "acknowledges that a time requirement is implicit in section 9(g)(3), insofar as that section gives foreclosure buyers an 'incentive for prompt payment.' If as Bayview argues, a foreclosure sale buyer could withhold payment of postforeclosure sale assessments indefinitely and still obtain the benefit of section 9(g)(3), the statute would not provide any such incentive." *Country Club Estates*, 2017 IL App (1st) 162459, ¶ 18.

The *Country Club Estates* court thus held that "to extinguish an association's lien for preforeclosure sale assessments, a foreclosure buyer must make 'prompt' payment of current assessments." *Country Club Estates*, 2017 IL App (1st) 162459, ¶ 21. The court reasoned that *1010 Lake Shore* "did not create a requirement of promptness; it merely articulated the requirement that was already implicit in the purpose underlying section 9(g)(3)." (Emphasis omitted.) *Country Club Estates*, 2017 IL App (1st) 162459, ¶ 30.

¶ 34    Eight months after the Second Division filed its opinion in *Country Club Estates*, the Sixth Division filed its opinion in *Quadrangle House Condominium Ass'n v. U.S. Bank, N.A.*, 2018 IL App (1st) 171713, ¶ 11, rejecting the condominium association's argument that its lien for unpaid preforeclosure sale assessments was not extinguished where the foreclosure purchaser delayed paying postforeclosure sale assessments.  The Sixth Division stated,

> "Contrary to our colleagues in [*Country Club Estates*], we do not believe that the cited sentence in *1010 Lake Shore* means that payment of post-purchase assessments must be prompt in order to constitute a confirmation of the extinguishment of any lien created under subsection 9(g)(1) for any unpaid pre-sale assessments."  *Quadrangle House*, 2018 IL App (1st) 171713, ¶ 13.

¶ 35    However, about one month later, the Sixth Division filed *V&T Investment Corp.*, 2018 IL App (1st) 170436, ¶ 30, citing *Country Club Estates* as guidance on determining when a foreclosure purchaser's payment of assessments is prompt.   The First District has issued additional opinions on both sides of the issue.  Compare *U.S. Bank, N.A. v. Quadrangle House Condominium Ass'n*, 2018 IL App (1st) 171711, ¶ 20 ("We see no reason to depart from our holding in [*Country Club Estates*] and proceed with our analysis to determine whether U.S. Bank made prompt payment of postforeclosure sale assessments."), with *5510 Sheridan Road Condominium Ass'n v. U.S. Bank*, 2017 IL App (1st) 160279, ¶ 20 (section 9(g)(3) does not "create a timing deadline").

¶ 36    Defendant relies on *5510 Sheridan*, where a foreclosure action resulted in the bank purchasing the condominium unit at a judicial sale.  *5510 Sheridan*, 2017 IL App (1st) 160279, ¶ 1.  Nine months after the sale, the bank paid the postsale common expenses that had accrued during the previous seven months, since the date it acquired title.  *5510 Sheridan*, 2017 IL App

(1st) 160279, ¶ 6. The association sued the bank to enforce the lien for presale assessments, postsale expenses that had accrued since the bank's initial payment, a special assessment, and attorney fees. *5510 Sheridan*, 2017 IL App (1st) 160279, ¶ 8. Six weeks later, the bank tendered payment to make current its account for postsale assessments. *5510 Sheridan*, 2017 IL App (1st) 160279, ¶ 9.

¶ 37 Defending its summary judgment on appeal, the association argued that the payments did not extinguish the lien under section 9(g)(3), because they were not made on " 'the first day of the month after the date of the judicial foreclosure sale.' " *5510 Sheridan*, 2017 IL App (1st) 160279, ¶ 13. The First District, Sixth Division, held,

> "based on a plain reading of section 9(g)(3), that the phrase 'from and after the first day of the month after the date of the judicial foreclosure sale' does not create a timing deadline with which purchasers must comply to avail themselves of the statute's extinguishment provision. Instead, that phrase simply demarcates the precise moment in time when the foreclosure-purchaser becomes liable for postsale common expenses."
> *5510 Sheridan*, 2017 IL App (1st) 160279, ¶ 20.

In other words, the association argued that a full payment made just one day late would not extinguish a lien under section 9(g)(3). Rejecting that strict interpretation of the statute, the court held that there was no deadline at all and that the lien could be extinguished at any time before enforcement.

¶ 38 Defendant argues that "the logic and rationale of *5510 Sheridan* and [*Quadrangle*] is a better analysis than *Country Club Estates*," but defendant misses the premise of those cases. Each time that the First District has wrestled with whether late payment of postsale assessments confirms the extinguishment of the lien for presale assessments, the foreclosure purchaser has

made *full* payment of postsale assessments. Plaintiff argues that payment of less than the full amount owed for postforeclosure assessments does not extinguish the lien, and *Quadrangle* supports that position:

> "Our conclusion that payment of post-purchase assessments, whenever made, is the step necessary to confirm the extinguishment of any lien created under section 9(g)(1) of the Act is supported by the supreme court's decision in *1010 Lake Shore*. In paragraph 24 of that decision, the supreme court held that, 'under the plain language of section 9(g)(3), the payment of postforeclosure sale assessments formally approves and makes certain the cancellation of the condominium association's lien.' [Citation.] In paragraph 27, the supreme court held that '[s]ection 9(g)(3) provides an additional step to confirm or formally approve the extinguishment by paying the postforeclosure sale assessments.' [Citation.] In that same decision, the supreme court held that: 'Section 9(g)(3) only requires the foreclosure sale purchaser to pay assessments coming due following the foreclosure sale. Payment of those assessments confirms the extinguishment of the lien for the prior owner's unpaid assessments.' [Citation.] The supreme court never qualified its analysis by stating that, before the payment of post-purchase assessments could act to confirm the extinguishment of any lien created under subsection 9(g)(1) of the Act, the payment must be made promptly following the purchase of the condominium at a foreclosure sale." *Quadrangle*, 2018 IL App (1st) 171713, ¶ 14.

¶ 39 Even under the approach where promptness is not required under section 9(g)(3), a foreclosure purchaser must, in fact, pay the postforeclosure sale assessments to confirm extinguishment of the lien. Here, defendant failed to take that step. He tendered a fraction of the amount owed for the monthly assessments that accrued after the sale, and there is no evidence

that he tendered any additional payment before the judgment. At the time of defendant's $1670 payment, he owed at least $3607 for those assessments, plus late fees. Defendant asserts that he intended his payment to be applied to six months of presale assessments[1] and one month of postsale assessments, but even if his payment were applied entirely to the postsale arrearage, it would not amount to the step necessary to confirm extinguishment of the lien under section 9(g)(3), because it did not make his account current by the time that judgment was entered for plaintiff.

¶ 40    Defendant cites no authority for the proposition that partial payment confirms extinguishment of the lien. The case most analogous to this one is *V&T Investment*, where the foreclosure purchaser started paying assessments approximately two months after the confirmation of the foreclosure sale. *V&T Investment*, 2018 IL App (1st) 170436, ¶ 4. The initial payment was for the two months of assessments following the confirmation of sale, but the purchaser still owed assessments for the two months between the sale and the confirmation. *V&T Investment*, 2018 IL App (1st) 170436, ¶ 27.

¶ 41    The court in *V&T Investment* held that the lien was extinguished under section 9(g)(3) even though the purchaser had paid for two months of assessments approximately four months after the judicial sale. *V&T Investment*, 2018 IL App (1st) 170436, ¶ 30. Citing *Country Club*

---

[1] Distinct from the lien-extinguishing provisions of section 9(g)(3), section 9(g)(4) provides a mechanism for a condominium association to recover a portion of the prior owner's unpaid assessments and to ensure payment of assessments that accrue following the foreclosure sale. *1010 Lake Shore*, 2015 IL 118372, ¶ 31. Section 9(g)(4) allowed plaintiff to recover from defendant the unpaid assessments that had become due during the six months that preceded the institution of the foreclosure action against the previous owners.

*Estates*, which recognized the routine delay between the sale and the order confirming the sale, the court adopted the view that courts " 'can and should take such circumstances into account when determining whether a buyer's payment of assessments is "prompt." ' " *V&T Investment*, 2018 IL App (1st) 170436, ¶ 30 (quoting *Country Club Estates*, 2017 IL App (1st) 162459, ¶ 24). " '[I]f it takes months for a judicial sale to be confirmed by the court, but the buyer pays its assessments shortly after the confirmation order (dating back to the month following the sale), the buyer's payment could be deemed prompt under the circumstances.' " *V&T Investment*, 2018 IL App (1st) 170436, ¶ 30 (quoting *Country Club Estates*, 2017 IL App (1st) 162459, ¶ 24).

¶ 42　The court held that, "[b]ecause a delay in the confirmation of the sale is exactly what occurred here, we find that V&T's payment was prompt under the circumstances, as it was made shortly after the confirmation of the sale. However, while V&T's payment was prompt under this particular set of circumstances, according to *Country Club Estates*, the payment should have included the assessments [between the sale and the order confirming the sale]." *V&T Investment*, 2018 IL App (1st) 170436, ¶ 30. Accordingly, the court factored in the two months of missing assessments in its calculations of the judgment.

¶ 43　Even if a partial payment were sufficient to extinguish the lien, defendant's delinquency in making payments was not the result of a delay between the sale and the order confirming the sale. Defendant's payment of one month of postsale assessments on the eve of trial was a blatant attempt to circumvent the lien-extinguishment requirement of section 9(g)(3). Unlike in the previous line of cases analyzing section 9(g)(3), we need not consider whether full but late payment of postsale assessments extinguishes a lien under the statute.

¶ 44　　　　　　　　　　　　　　III. CONCLUSION

¶ 45　For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 46   Affirmed.